Sean Paul Reyes v. City of New York May it please the Court, Chase Mechanic for the appellant, City of New York. The district court profoundly disturbs the status quo by relying on a novel and mistaken construction of the State and City Rights Report Acts to enjoin NYPD's no-recording policy, thereby allowing Reyes to create a permanent and public record of who visited a police precinct and what precinct they visited. This Court should reverse the order for any one of three reasons. First, because the court should have recognized, the district court should have recognized that it would not likely be able to exercise supplemental jurisdiction over these novel and complex State law issues. Second, because the court misconstrued the Rights Report Acts by interpreting them to preclude the City from restricting recordings in its capacity as a proprietor rather than a law enforcement agency per se. And third, because Reyes hasn't articulated why this harm, absent an injunction, would be irreparable or why it is not outweighed by the serious public interest factors that the City presented and which the district court recognized. I'd like to turn first to the question of supplemental jurisdiction, because it is quite unusual for a Federal court, it's not unprecedented, but it is unusual for a Federal court to enjoin government operations based solely on a State statute that is as untested as this one. And although 28 U.S.C. 1367 states that courts may decline supplemental jurisdiction, this Court has held that in Seabrook, that in some cases the court must decline supplemental jurisdiction as a matter of Federalism and comedy where a pendent State law claim turns on novel or unresolved questions of State law. May I ask you a question about that? I mean, there is a First Amendment Federal claim in this case, and while the district court found that it didn't warrant preliminary injunction on that ground, it didn't dismiss the claim, correct? That's correct. So as long as there is a Federal claim, isn't the district court within its discretion in entertaining a State law claim that's based on the same set of facts? Not under these circumstances, and we cited two cases on point, Carver and Fay, which my adversary hasn't responded to. In Carver, the district court did not dismiss the Federal contract clause claim. That was a challenge to a county interim financial authority that imposed a wage freeze. They also imposed – they also brought a State law challenge, which the district court did entertain, and this Court held that it was an abuse of discretion to exercise supplemental jurisdiction over that claim, stating that it is enough that the construction of the provision of the NIFA Act, which was the State statute at issue, raises an unresolved issue of State law that should be resolved by the New York State courts because the manner in which the statute is construed implicates significant State interests. And there, too, that was based on the same set of facts. It was the same wage freeze being challenged by the – by the county financial authority. And then – and that's 730F3rd150. The other case that we cited is Fay v. South Colony Central School District, 902F221, 1986. That case brought constitutional Federal claims, statutory Federal claims, and a State claim in which a father alleged that he was entitled to records concerning his child's education. The district court found that at least the statutory Federal claims survived, but held that it was an abuse of discretion to exercise pendant jurisdiction over the State law claims, again, because of their novelty and their unresolved nature. Well, now, of course, the district court, with respect to questions of New York law, is not in a position to certify these difficult questions, but we are. So is an alternative action here to decide whether the district court correctly concluded what the problems or how the New York law would operate here for us to first ask the New York Court of Appeals to tell us how to construe this? So my concern with certification here deals with the procedural history – or the procedural posture of this appeal. We have a preliminary injunction in effect right now, and if this court were to certify to the Court of Appeals, that injunction would remain in effect potentially for months or a year while it's pending in the Court of Appeals. So I think that procedural posture complicates things. I also think that, as a general matter, Congress didn't indicate that certification to a State high court would be a panacea where supplemental jurisdiction was otherwise lacking. If that were the case, then this Court in Carver could have certified to the Court   Well, it's not lacking, is it? It's a matter of whether it's appropriately exercised. It's not lacking. There's a Federal claim, and it's pending to that. I agree, Your Honor. I should say where it would be an abuse of discretion. All right. And that's not the route that this Court took in Carver. I don't think it would be unreasonable, but my main concern deals with the fact that this injunction would presumably remain in effect while the certified question is pending before the Court of Appeals. But the case is still ongoing. In fact, the Court recently ruled on a motion to dismiss, correct? Correct. So it's not as if the case is going anywhere quickly. Presumably, discovery will take place. And I understand that you're here on the preliminary injunction and whether that should continue, but it bears noting that that injunction was limited by a three-judge panel.  Significantly. Yes. Would you agree? Absolutely, yes. So does that alter your concerns that you just expressed about the delay? Well, it alters, but it doesn't ameliorate them. Mr. Reyes himself is not just a random citizen. He's the most, arguably the most prominent First Amendment auditor in the country. He has hundreds of thousands of followers. And any person who wants to know whether their spouse or their acquaintance has gone to a precinct to report a crime and knows that Mr. Reyes audited that precinct on a certain date would simply have to access his social media channels, and they might be able to find the answer. So there are concerns with allowing Mr. Reyes to continue to report. In fact, when he visited the 61st Precinct prior to this case being brought, he was able to capture part of a security code that an officer entered to a restricted area. So there are... So your security, the security concerns that you argued should prevent the Court in doing an analysis of the relative interests remain an issue, even if the preliminary injunction is limited only to Mr. Reyes? Correct. Even limiting the injunction to Mr. Reyes would still raise those concerns. Because of the public, it's not that he's just going in. It's that he's reporting and then posting it on social media. Correct. And that is what he testified to, and that's what the record shows. He's not simply going in to access. He's going in in order to post them to his social media channels. And as the Court appreciates from the briefing, I think the parties are at loggerheads about what this statute means. The district court thought that the analysis began and ended at the text of the statute. It certainly begins there. But we have other common law, precedential doctrinal principles floating around. So I certainly do agree that this is not an appropriate candidate to be decided by the Federal court in the first instance. I see him basically out of time. So we would ask the Court to reverse. Let me just make sure that there are no further questions from the panel. No? Then you have reserved your two minutes for rebuttal. Thank you.  Good morning, Your Honors. Andrew Case from Latino Justice, Perl Def. I'm joined by my colleague Nina Rovan-Oberdyk representing Sean Paul Reyes, plaintiff and appellee. The New York Police Department has a total and absolute ban on recording police activity so long as that activity takes place in the lobby of an NYPD precinct, spaces that are otherwise open to the public, 24 hours a day, 365 days a year. This rule, the trespass rule, operates as follows. If you are recording in a precinct, you will be asked to stop. If you do not stop, you will be asked to leave. If you do not leave, you will be arrested for trespassing. Mr. Reyes went to the 61st Precinct to record himself filing a complaint, and he was arrested for trespass. He returned to the 75th Precinct, and he was arrested for trespass. He obtained a preliminary injunction, which this Court should affirm, because he provided evidence at the P.I. hearing that he would suffer irreparable harm if he did not have the injunction, and because the trespass rule violates the New York State Court of Appeals' opinion on how to use the trespass law and is, therefore, invalid. In terms of irreparable harm. Yes. Is there a distinction between irreparable harm to Mr. Reyes versus the general public's ability to see what he is recording is occurring? The irreparable. Because I thought the case law said the irreparable harm has to be to the individual seeking the injunction, not any third-party beneficiaries of that conduct. Can you? Sure. I think that's why the injunction was limited to just Mr. Reyes, and I think appropriately so. Mr. Reyes will suffer irreparable harm because if he goes to a precinct and records without the injunction, he will be arrested. And being arrested for exercising a right is quintessential irreparable harm. You – he will be arrested, it's actual and imminent harm because he's going to be subject to arrest, and it's not reparable by money damages because what you've lost is the ability to exercise the right. In this case, recording the police, having that moment in time that will be irreparable harm is specific to him, just as the injunction is specific to him. Have you challenged the district court's decision that he's unlikely to succeed on his Federal First Amendment claim? So the district court found that he was unlikely to succeed on the merits of his Federal claim, and then they moved to dismiss that claim, and the district court denied the motion to dismiss. My question is, have you challenged that? No, we have not. We're not trying to reinstate an injunction based on the First Amendment claim. Okay. So the irreparable harm is to Mr. Reyes specifically. To look at likelihood of success on the merits, it's important to understand what Mr. Reyes is and isn't seeking and what he does and does not need to prove. We are not seeking and do not need to prove that the Right to Record Act provides a total and unfettered right to record in precinct lobbies at any time and under any circumstances. We are simply challenging the trespass rule. And the trespass rule says that you cannot record in the New York City police precinct lobby at any time and under any circumstances. And this is an improper use of the trespass law, according to the New York State Court of Appeals in People v. Leonard. That is the case where a Binghamton student after graduation was labeled a persona non grata by the university. He was told he could not return to campus, which is otherwise open to the public. He did return to campus. He was arrested for trespass. The New York State Court of Appeals said that this is illegal because when a government entity holds a space open to the general public, it cannot then select individuals and withdraw the license to be on that space and arrest them for trespassing for, quote, exercising a constitutional or statutory right. The trespass law is illegal because it says you are trespassing because you are recording. And this is why we don't need to get into deep and close analytics of whether there are some exceptions to the Right to Record Act or could you craft a rule that allowed for balancing these exceptions, because the only rule in place is the rule that says you are trespassing because you are recording, because you are exercising something that we know is a State right, your license is taken away, and you are trespassing, and People v. Leonard bars that. If you look at the cases of the State sites, the city sites, either these are spaces that are not open to the public generally. So, yes, if the city owns an apartment building, it can lock the doors, it can arrest you for trespass if you're in the hallways. The space is not open to the public generally. That's People v. Barnes. It's one of their cases. The two police cases they cite, People v. Martinez and People v. Reap, these are cases in which people were interfering with the use of the property. In Martinez, they're locking arms in the hallways of 1PP, stopping people from getting to the police commissioner's office. In Reap, they're locking arms in the lobby of a precinct, jumping up and down, screaming and threatening people. In both of these instances, they're interfering with the basic use of the property. That is a principle that is set forth in a case called People v. Haterman, which says you cannot go to the IRS office and go to people who are waiting in line and tell them they don't have to pay taxes under your theory. You can be ejected for trespass for that. There's no evidence Mr. Reyes was interfering with any police conduct at either occasion, and there's no evidence that the trespass rule depends upon people interfering with police activity. Very briefly, on likelihood on balance of equities and the public interest, I think these two, the issues that the city raises, might have been more applicable to a citywide injunction than to the injunction that's enjoyed by Mr. Reyes. He has been going to precincts. He has been recording. He had a recording of himself in a New York City precinct posted on his website yesterday. He was there last month. There have been no issues. There have been no concerns about public privacy. There have been nothing but very polite encounters, in fact. And one last point, then, on supplemental jurisdiction, not only does the First Amendment claim still survive, but there's also a Fourth Amendment claim which aligns with the contours of the Right to Record Act claim almost precisely. It says that these arrests, because they lack probable cause, they're also a Fourth Amendment violation. So the trespass rule violates the Right to Record Act, and it violates the Fourth Amendment. So any issues of interpretation of State law, which we don't believe are as complicated given the trespass rule, are going to be present in the Fourth Amendment claim going forward anyway. I want to ask you about that, that it's not as complicated. In reviewing whether the district court abused its discretion, which is the standard here in exercising the supplemental jurisdiction, it seems that the district court thought that the New York question had to be novel and complex in the conjunction to decline to exercise jurisdiction. Is that the correct standard, or is it the disjunctive novel or complex? Because I think we might understand why it's novel, but as you yourself have suggested, it may not be complex. I'm going to confess I don't know the answer to whether it's novel and complex or novel or complex. I don't believe that it would really make a difference here, because it's not novel to answer this question because of the court of appeals case in Peeble v. Leonard and it's not complex for the same reason. I think if we were talking about a different rule. Well, if we were to disagree with you about the novelty question, where would we be? Would the district court have erred in thinking that it also had to be complex? I'm going to admit I don't know whether it's novel and complex or novel or complex. If this panel believes that the question is novel and novelty alone without complexity is enough for the court to have been wrong to exercise supplemental jurisdiction, it could send this case to the New York State Court of Appeals for certification. I think if there is we would say that this question is very simple, but that if this panel feels there's some reason to come to a conclusion rather than reverse it and send it back to the district court and say you shouldn't have exercised supplemental jurisdiction and dismiss the case and send it to State court, you could send it to the court of appeals. The law for considering the exercise of supplemental jurisdiction also suggests that a court should consider whether it implicates the administration of State government. Did the district court consider that question? I don't recall from the decision whether there was a discussion of that issue, but I don't believe that — I think the evidence speaks for itself. If you look at the videos that he's been posting, there's been no interference with government from having the injunction in place. No, no, whether the injunction implicates the administration of State government and my concern is whether we need to have consideration of whether an injunction that affects how the New York City Police Department operates its precincts implicates the administration of State government. I would say that the injunction doesn't actually change how they operate the precincts other than this — they can't eject before trespassing. They haven't — I haven't seen major changes in, you know, how the precincts are laid out or this or that or, you know, putting up new walls or changing things. I just have seen ordinary encounters that would have happened regardless happening in the same way and just being reported. What is your view on the question I asked your adversary about whether this court should certify the question of whether the State RTRA is violated by these actions, whether we should certify that question to New York? We would say that it's — that the question is quite simple and that the injunction should be affirmed without certification, but that if this panel feels there are concerns in that regard, certification would be more efficient than, as I went through before, the whole process of going back to the State court and dismissing cert. And what would you mean — the injunction was — the preliminary injunction was stayed for a period pending this appeal? It was — there was a stay motion. There was an administrative stay. That was when the injunction applied to the entire city. And after the stay motion hearing, the Court narrowed the injunction to just Mr. Reyes and affirmed it. All right. So he is presently enjoined. The injunction he received is not in effect — is not in effect as to him anymore. The State can prohibit him or can't prohibit him. Currently, the New York City Police Department is enjoined from enforcing a trespass policy against him specifically. Okay. Thank you. Thank you. Judge Raggi, the novel or complex standard is a judge-made rule. It's — it's supple. It's not based on 1366. No, no. It's a fact. It's — but it is a rule that we've instructed district courts to consider. Correct. And I'll get to the complexity in a moment, but the district court did not consider the impact on the administration of government because Reyes can't explain why any textual argument under which he would be able to prevail would not also allow a person to bring a recording device, say, if they were escorted into a lineup room in the interior of a precinct and compromise a criminal investigation by recording the lineup, or why they wouldn't be able to bring a cell phone inside of a prison. So — He's suggesting that someone who is simply a member of the public, an observer, not someone who's in the precinct because he's been arrested or in some way is going to interfere, that they couldn't limit that. Well, it wouldn't necessarily be physical interference. And I think if we go down that path, that only complicates the state law issues because — — if you include recording in prisons and inside, you know, more private areas of law enforcement, that would conflict with the statute, the regulation at issue here, and would preempt that regulation, was, I thought, your opponent's argument, so that we're not dealing with that issue. Now, I understand your argument is that even bringing a camera into a lobby may allow someone to record certain things that are happening in other parts of the precinct that may be private. And I thought that's where your argument was going, not that this — I mean, I know you argued that it wouldn't keep people from going into prisons with recording devices, but I thought the response was there are other regulations that preclude that. I see my time is up, if I may answer your question. Those other regulations would be preempted by a statute, or at least it's quite possible that a New York court would find them to be preempted by a statute. Typically, a statute supersedes a regulation. It is also true, as the district court found, that even in the lobby, one can see into nonpublic areas of the precinct. Thank you. Thank you. Thank you to both sides. We will reserve judgment decision.